AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

xxxx Shannon Place SE
Washington, DC , 20020

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**
CASE NUMBER:

(Further described below)

I ___Michael T. Ross___ being duly sworn depose and say:

I am a(n) ___Special Agent with the United States Secret Service___ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as  (name, description and or location)

xxxx Shannon Place SE is a two story family dwelling with white siding located in the Anacostia neighborhood of Washington, DC. The home sits alone on a sizable lot. The front door is located on the right it has a metal frame, silver in color, storm door that opens to reveal a white front door. The house is cleared marked with "xxxx" just to the left of the door. The numbers are gold in color with a black background and oriented in a vertical fashion.  A small black mailbox is located directly beneath the numbers.  Three steps lead to the front porch where the front door is located. The front porch is supported by three red brick columns with a dark colored railing.  The front of the house has six windows total, two on the first floor and four across the second floor.  When facing the front of the house, the side of the house has no doors, the side to the left has four windows, two on the first floor and two on the second floor.  The left side of the house has no doors.  The rear of the house has a screened in back porch with a door that is located to the left of center.  Additionally, there are two windows located on the second floor.  When facing the front of the house, the side to the right has no visible windows or doors.

concerning a violation of Title __18__ United States Code, Section(s) _§_ 513, 514. The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

ANGELA HART-EDWARDS
Federal Major Crimes Section
(202) 307-0031

Signature of Affiant
MICHAEL T. ROSS, SPECIAL AGENT
Metropolitan Police Department

Sworn to before me, and subscribed in my presence

_____     at Washington, D.C.
Date

_____     _____
Name and Title of Judicial Officer           Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

In the Matter of the Search of:
xxxx Shannon Place SE
Washington, DC  20020

**Affidavit in Support of a Search Warrant**

I, Michael T. Ross, being duly sworn, hereby depose and state the following:

I am Special Agent with the United States Secret Service and am currently assigned to the Washington Field Office, Metropolitan Area Fraud Task Force, Washington, D.C.  I have been employed by United States Secret Service since April 2002. Prior to joining the Secret Service, I was a Forensic DNA Analyst for the Marshall University Forensic Science Program and was assigned to the West Virginia State Police Crime Lab in the Biochemistry Section.  I held this position for five years.  My education includes a Bachelors Degree in Biological Science from Marshall University, a Masters Degree in Forensic Science from Marshall University, Criminal Investigator Training Program and the Secret Service Special Agent Training Course.  My responsibilities include the investigation of possible criminal violations in relation to the Financial Institution Reform, Recovery, and Enforcement Act, the Money Laundering Control Act, and other related fraud offenses involving U.S. obligations and securities.  I have conducted investigations for violations of Financial Institution Fraud, Identity Theft, and Access Device Fraud during the course of my law enforcement career.  I have also received extensive training in criminal investigative procedures, and have conducted criminal investigations involving identity theft and fraud to include violations of Title 18, United States Code 513 (Securities of the States and Private Entities), and Title 18 United States Code 514 (Fictitious Obligations).

The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other individuals, law enforcement officials, corporate security personnel; on my review of records, documents, and other physical evidence obtained during the investigation.  To date, I have unsuccessfully made contact with victims and bank officials in this matter.

Based on my training, experience, and participation in other financial investigations involving fraudulent activities, your affiant knows:

That those involved often place items used to produce counterfeit securities, lists of victim's information, and other instruments used to produce fraudulent items in locations that would lessen the likelihood of detection of these items by law enforcement authorities;

That those involved maintain records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to Financial Institution fraud and Identity Theft. That the aforementioned records, receipts, notes, ledgers, etc., are maintained where they have ready access to them;

That it is common for persons involved in fraudulent activities to place proceeds of bank transactions, and records of fraudulent transactions in secure locations within their residences, automobiles, businesses, and storage facilities for their ready access and to conceal from law enforcement authorities;

That when individuals involved in fraudulent activities obtain large proceeds from their activities they attempt to legitimize their profits. I know that to accomplish these goals they utilize domestic and foreign banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts;

That those involved in fraudulent activities commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the organizations;

This affidavit contains information necessary to support an application for a search warrant to search all premises of the residential property located at xxxx1 Shannon Place SE, Washington, DC 20020. The property is fully described in Attachment B of this affidavit. In addition, this affidavit contains information necessary to seek authorization to seize and search any computer equipment, peripherals and electronic storage media found within xxxx Shannon Place SE, Washington, DC 20020.

Based upon the investigation conducted by your affiant and other law enforcement agents, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that within the District of Columbia and elsewhere, Stacy Glenn Watkins and others knowingly executed, or attempted to execute a scheme to obtain monies, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution, by means of false or fraudulent pretenses, representations, or promises, along with the identities of customers of said financial institutions and exchanged that information via use of counterfeit financial securities.

There is probable cause to believe that evidence, contraband, fruits and instrumentalities of the foregoing violation are presently located at xxxx Shannon Place SE, Washington, DC 20020.

**Statement of Facts Supporting Probable Cause**

1.     On December 5, 2006, I was contacted by SA Earl Hicks, United States Secret Service, who advised that Daniel Earl Coates had been arrested by Prince William County Police Department for attempting to purchase a vehicle from a dealership using a counterfeit check, later identified as Lake Ridge Auto Sales, in Prince William County. Additionally, Mr. Coates identified Glen Watkins as the manufacturer of the counterfeit check.

2.     On December 5, 2006, SA Patrick Miller and I telephonically contacted Detective Kevin McClelland, Prince William County Police Department, to obtain the details of this arrest and

subsequent interview. Detective McClelland provided a narrative detailing this incident. Additionally, Detective McClelland stated that he would e-mail the details of this investigation to me.

3. On December 5, 2006, I received the aforementioned e-mail from Detective McClelland. The information contained within this e-mail is as follows:

On or about November 30, 2006, Stacy Glenn Watkins purchased a 2000 Honda Accord, red in color, Virginia temp tags Xxxx-xxx, VIN xxxxxxxxxxxxxxxxxxx from Lake Ridge Auto Sales in Prince William County Virginia. Mr. Watkins paid for the vehicle with a Cashiers Check from NIH Federal Credit Union. Check #xxxxx was made out to Lake Ridge Auto Sales in the amount of $7,500.00. The routing number on the check is xxxxxxxxxx. The account number on the check is xxxxxxxxxxxxx. He came to the business in another Honda (DC tags CK-xxxx) with 3 other subjects (black female and two black males). After the purchase, Mr. Watkins left the Lake Ridge Auto Sales in the Honda he purchased with the black female. The other two subjects left in the Honda with DC tags. On or about December 12, 2006, the owner of Lake Ridge Auto Sales, Saeed Mansourimoaied, noticed a check missing from his personal check book. His check book was in his office at the time he was completing the sale with Mr. Watkins.

On December 04, 2006, a different black male presented himself to purchase a vehicle with a cashiers check from NIH Federal Credit Union. Mr. Mansourimoaied recognized him as one of the male subjects that was with Mr. Watkins on November 30, 2006. The subject identified himself as Daniel Coates. Mr. Coates purchased a 1996 Jeep Cherokee for $5,500. Check number xxxx was made out to Lake Ridge Auto for $5,500.00. The routing number was xxxxxxxxx. The account number on the check was xxxxxxxxx. At the time, Mr. Mansourimoaied did not pay much attention to the check. Mr. Coates completed the sale, but the car would not start when he attempted to drive it off the lot. Mr. Mansourimoaied told him that the starter went bad. In addition, Mr. Mansourimoaied stated he would replace the starter and Mr. Coates could pick up the vehicle on December 5, 2006. After Mr. Coates left, Mr. Mansourimoaied noticed that the routing number and the account number on the cashiers check were the same routing number and account number as his personal check. At this point, Mr. Mansourimoaied contacted the Prince William County Police Department.

On or about December 5, 2006, Detective McClelland spoke with Mr. Mansourimoaied. Mr. Mansourimoaied stated that he was supposed to call Mr. Coates to make arrangements to deliver the vehicle to Oxon Hill, Maryland. Detective McClelland told Mr. Mansourimoaied to make contact with Mr. Coates and advise that he would not be able to deliver the vehicle today. When Mr. Mansourimoaied contacted Mr. Coates, Mr. Coates was adamant he wanted the vehicle on this date. Mr. Coates stated he would get a starter and retrieve the vehicle. Detective McClelland and members of Prince William County Police Department responded to Lake Ridge Auto Sales and waited for Mr. Coates to arrive. On the same date, at approximately 1230 hours, Mr. Coates arrived with his father (Reginald Coates) and a subject named Deion Matthew. Mr. Coates was taken into custody. Additionally, Reginald Coates and Deion Matthew were detained for questioning. Mr.

Coates was read his Miranda rights and after agreeing to waive his constitutional right he advised the following:

Mr. Coates has been having a hard time paying bills and supporting his pregnant girlfriend. Mr. Coates advised that a subject he knows by the name of Michael McCoy (unknown spelling) told him he could help him out. Mr. McCoy told Mr. Coates if he needed a car he could get him a check for it. Mr. McCoy advised Mr. Coates that he knows someone at NIH Federal Credit Union that gets him blank checks. Mr. Coates advised that another subject, identified as Glenn Watkins, is also involved in fraudulent checks. Detective McClelland stated that Mr. Coates alluded that Mr. McCoy and Mr. Watkins are associates and have worked together in some manner to manufacture counterfeit checks. Mr. Coates admitted to coming to Lake Ridge Auto Sales with Mr. Watkins, on November 30, 2006. Mr. Coates advised that after observing the successful purchase of a vehicle by Mr. Watkins, Mr. Coates wanted to get one. Later that evening, Mr. Coates contacted Mr. McCoy and asked for check from him. Mr. Coates met with Mr. McCoy on Benning Road in District of Columbia and payed three hundred and twenty five dollars ($325) for a check to Mr. McCoy. On December 1, 2006, Messrs. McCoy and Coates met at Hechinger Mall in the District where Mr. McCoy gave a check for five thousand five hundred dollars ($5,500) to Mr. Coates.

On or about December 3, 2006, Mr. Coates was at Glenn Watkins' residence, which consists of three levels located on Shannon Place in Washington, D.C. During the visit, Mr. Coates was in the basement of the residence when he observed Mr. Watkins printing checks utilizing a computer.

Mr. Coates stated that Mr. Watkins carries a black and blue book bag that contains blank checks and other information.

4.   On December 5, 2006, based on information provided by Detective McClelland, NCIC queries were conducted for Stacy Glenn Watkins and Daniel Earl Coates. It was discovered that Mr. Watkins has a criminal history that includes uttering of false documents, felony forgery, and uttering a worthless check. Additionally, it was discovered that Mr. Coates has a criminal history that includes felony manufacture, sale, and possession of a controlled substance, possession/distribution of controlled paraphernalia, possession of marijuana, simple assault and destruction of property.

5.   On December 5, 2006, Detective McClelland faxed copies of the following: the purchase agreement for the 1996 Jeep Grand Cherokee; Daniel Earl Coates District of Columbia identification card; an ACE Cash Express debit card issued to Daniel E. Coates; the check stolen from Saeed Mansourimoaied made out to Skytel Communications in the amount of $2,350.00; the back of the stolen check containing Mr. Watkins social security number (xxx-xx-xxxx) printed below the endorsement line; Stacy Glenn Watkins' District of Columbia identification; and both of the counterfeit cashiers checks made out to Lake Ridge Auto Sales and Lake Ridge Auto, respectively, in amounts of $7,500.00 and $5,500.00. The $5,500 counterfeit check contained the same routing and account numbers (xxxxxxxxxx & xxxxxxxx, respectively) as Mr. Mansourimoaied's stolen check contained.

6.      On December 6, 2006, Detective McClelland telephonically advised me that Mr. Mansourimoaied had advised that a second counterfeit check had been discovered by his banking institution. Detective McClelland faxed a copy of this counterfeit check to me. This counterfeit check was made out to Skytel Communications for the amount of $1,800.00. Additionally, the counterfeit check contains the routing and account numbers that is same as the routing and account numbers on Mr. Mansourimoaied stolen check (mentioned in paragraph 5).

7.      On December 6, 2006, Detective McClelland faxed a copy of the purchase agreement for the Honda Accord (VIN xxxxxxxxxxxxxxxxx) that Mr. Watkins purchased on November 30, 2006 to me. The address on this purchase agreement is xxxx Shannon Place SE, Washington, DC 20020.

8.      On December 6, 2006, SA Miller obtained District of Columbia identification details for Mr. Watkins from Detective Richard Espinosa, Metropolitan Police Department. The identification details and identification card information matches the personal identifiers for Mr. Watkins and lists an address of xxxx Shannon Place SE, Washington, DC 20020. This identification card was issued on August 15, 2006.

In addition, Detective Espinosa conducted a public records database search. This search reveals the xxxx Shannon Place SE, Washington, DC 20020 is a listing connected with Glenn Watkins, SSN xxx-xx-xxxx. The SSN, DOB, and name matches information that are listed on a District of Columbia Driver's License issued to Stacy Glenn Watkins.

**Seizure and Search of Equipment and Data**

Your affiant knows that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation involving the production of counterfeit checks in two distinct and important aspects: (a) the objects themselves may be instrumentalities, fruits or evidence of crime, and/or (b) the objects may have been used to collect and store information about crimes (in the form of electronic data).

Based upon my knowledge, training and experience, I know that in order to completely and accurately retrieve data maintained in computer hardware or on computer software, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is often necessary that some computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such a computer, be seized and subsequently processed by a qualified computer specialist in a laboratory setting. This is true because of the following:

a.      The volume of evidence. Computer storage devices (such as hard disks, diskettes, tapes, laser disks, zip drives, USB pen drives, thumb drives, etc.) can store the equivalent of thousands of pages of information or more. For example, a 40 Gigabyte hard disk drive, common in most new desktop computer systems, can store over 12 million pages of printed text and one million high quality picture files. Additionally, a user may seek to conceal criminal evidence by storing it in

random order with deceptive file names. Searching authorities are thus required to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This sorting process can take weeks or months, depending on the volume of data stored and it would be impractical to attempt this kind of data analysis on-site.

b.      Technical requirements. Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus, it is difficult to know prior to the search which expert possesses sufficient specialized skills to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

Due to the potential volume of data at issue and the technical requirements set forth above, it may be necessary that the above-referenced equipment, software, data, and related instructions be seized and subsequently processed by a qualified computer specialist in a laboratory setting. Under appropriate circumstances, some types of computer equipment can be more readily analyzed and pertinent data seized on-site, thus eliminating the need for its removal from the premises. One factor used in determining whether to analyze a computer on-site or to remove it from the premises is whether the computer constitutes an instrumentality of an offense and is thus subject to immediate seizure as such - or whether it serves as a mere repository for evidence of a criminal offense. Another determining factor is whether, as a repository for evidence, a particular device can be more readable, quickly, and thus less intrusively analyzed off-site, with due consideration given to preserving the integrity of the evidence. This, in turn, is often dependent upon the amount of data and number of discrete files or file areas that must be analyzed, and this is frequently dependent upon the particular type of computer hardware involved. As a result, it is ordinarily impossible to appropriately analyze such material without removing it from the location where it is seized.

Based upon my knowledge, training, and experience, and the knowledge and experience of other law enforcement personnel with whom I have spoken, I am aware that searches and seizures of evidence from computers taken from the subject premises commonly require agents to seize most or all of a computer system's input/output peripheral devices in order for a qualified computer expert to accurately retrieve the system's data in a laboratory or other controlled environment. Therefore, in those instances where computers are removed from the subject premises, and in order to fully retrieve data from a computer system, investigators must seize all magnetic storage devices as well as the central processing units (CPU) and applicable keyboards and monitors, which are an integral part of the processing unit. If, after inspecting the input/output devices, system software, and pertinent computer-related documentation, it becomes apparent that these items are no longer necessary to retrieve and preserve the data evidence, such materials and/or equipment will be returned within a reasonable time.

Based upon these facts, I submit that there is enough information in this affidavit to establish probable cause that Stacy Glenn Watkins along with others knowingly executed, or attempted to execute a scheme to obtain monies, funds, credits, assets, securities, or other property owned by, or under the custody or control of a financial institution, by means of false or fraudulent pretenses, representations, or promises, along with the identities of customers of said financial institutions in violation of Title 18, United States Code 513 (Securities of the States and Private Entities), and Title 18 United States Code 514 (Fictitious Obligations).

It is my opinion that there is probable cause to believe that evidence, contraband, fruits and instrumentalities of the foregoing violations, as further described in Attachment A hereto, are presently located at or within xxxx Shannon Place SE, Washington, DC 20020.

_____
Michael T. Ross
Special Agent
United States Secret Service

Sworn and Subscribed before me this _____ day of _____, 2006

## ATTACHMENT A
## DESCRIPTION OF ITEMS TO BE SEIZED

Wherefore your Affiant hereby makes this application and prays that a Search Warrant be issued authorizing him, with the necessary and proper assistants, to search the said PREMISES located at: xxxx Shannon Place N.E, Washington, DC 20020 for the following property specified, to wit:

Evidence of the commission of criminal offense as set forth in the Affidavit, including, but not limited to:

A.  RECORDS

1.  Records, documents, and materials containing information of past and present criminal activity related to the aforementioned criminal activity.  The terms "records," "documents," and "materials" includes records in all forms, such as those on paper, in any photographic form, in any mechanical form, and any form that is stored in electronic or magnetic form on hard drives, compact discs, zip disks, magnetic tapes or floppy disks.

    2.  Any notes, papers, books, records, ledgers, day planners, calendars, chronologies and summaries of daily activities.

    3.  Any spreadsheets, databases, charts and tables related to daily activities in the use of computers.

    4.  Books, records, receipts, bank statements and bank records, credit cards, money drafts, letters of credit, wire transfers, money orders and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money;

    5. Counterfeit and genuine checks, check stock, printing supplies and items that could be utilized to facilitate the manufacturing of counterfeit securities.

    6. United States currency reasonably believed to be the proceeds of financial crimes;

    7. Photographs and other documentary evidence of co-conspirators;

    8.  Indicia of occupancy, residency and/or ownership of the premises, including but not limited to utility and telephone bills, mortgage records, deed and lien records, cancelled US Mail and keys;

    10. To search persons found inside the premises for contraband related to financial crimes;

    11. To open any door, safe, lock boxes or receptacles where evidence could be hidden.

B.  HARDWARE

12.  Computer hardware, consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes, but is not limited to, any data-processing devices (such as central processing units, main frame servers, memory typewriters, and self-contained "laptop" or "notebook" computers, "palm pilots," and "schedulers"); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, removable magnetic disk storage drives and disks, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-gathering devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

C.  SOFTWARE

13.  Computer software consisting of digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, optical, or other digital form.  It commonly included programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

D.  DOCUMENTATION

14.  Computer-related documentation consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use the computer hardware, software, or other related items.

E.  PASSWORDS and DATA SECURITY DEVICES

15.  Computer passwords and other data security devices that are designated to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password usually operates as a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined security-related functions when activated.  Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data.

16.  Logs of electronic communications, disks of communications, hard copies of communications, audio cassette tapes of communications, calendars, appointment books, telephone number lists, incoming and outgoing facsimile messages, and any documentation, telephone records.

17.  The terms "records," "documents," and "materials" include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, or materials, their drafters, or their modifications may have been created or stored, including, but not limited to, any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, zip disks, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from magnetic storage devices).

18.  Any and all fruits, instrumentalities, and evidence (at this time unknown) of the crime of 18. U.S.C. Section 1030(a)(2)(C) (Fraud and related activity in connection with computers).

ATTACHMENT B

**xxxx Shannon Place SE**
**Washington, DC  20020-5817**

xxxx Shannon Place SE is a two story family dwelling with white siding located in the Anacostia neighborhood of Washington, DC.  The home sits alone on a sizable lot.
When facing the front of the house, the front door is located on the right.  The front door has a metal frame, silver in color, storm door that opens to reveal a white front door.  The house is cleared marked with "xxxx" just to the left of the door.  The numbers are gold in color with a black background and oriented in a vertical fashion.  A small black mailbox is located directly beneath the numbers.  Three steps lead to the front porch where the front door is located.  The front porch is supported by three red brick columns with a dark colored railing.  The front of the house has six windows total, two on the first floor and four across the second floor.  When facing the front of the house, the side to the left has four windows, two on the first floor and two on the second floor.  The left side of the house has no doors.  The rear of the house has a screened in back porch with a door that is located to the left of center.  Additionally, there are two windows located on the second floor.  When facing the front of the house, the side to the right has no visible windows or doors.